**MARIO VALENTE COLLEZIONI, LTD., Plaintiff–Appellee,**

v.

**CONFEZIONI SEMERARO PAOLO, S.R.L., Confezioni Mario Valente–Firenze, S.R.L. and Paolo Semeraro, Defendants–Appellants.**

**Docket No. 00–9287.**

United States Court of Appeals, Second Circuit.

Argued May 31, 2001.

Decided Aug. 27, 2001.

Kim Steven Juhase, Raia & Rondos, New York, NY, for Defendant–Appellants.

Daniel H. Greenberg, New York, NY, for Plaintiff–Appellee.

Before WALKER, Chief Judge, CALABRESI and POOLER, Circuit Judges.

POOLER, Circuit Judge:

Joseph Selig formed plaintiff, Mario Valente Collezioni, Ltd. ("Mario Valente"), with a partner, A.E. "Sonny" Dann to sell men's overcoats wholesale. Dann owned a company, A.E.D. Imports, Inc. ("AED"), which acted as Mario Valente's factor. AED, Mario Valente and Confezioni Sem-

eraro Paolo ("CSP")[1] entered into an agreement in 1994 appointing AED as CSP's exclusive distributor and importer of men's overcoats in the United States. The agreement, made in Italy, was signed by defendant Paolo Semeraro above a line stating "for and on behalf of Confezioni PAOLO SEMERARO," also a defendant, and stamped with the name of defendant Confezioni Mario Valente–Firenze ("CMV"). (Id.) The defendants, all Italian residents, and Mario Valente, had a series of disagreements in late 1996 and 1997 over a number of issues, including the alleged appearance of coats in the United States bearing the Mario Valente name but not being sold by Mario Valente, in violation of the agreement. Mario Valente sued defendants in the Southern District of New York for breach of contract, trademark infringement and unfair competition. Mario Valente received a default judgment. After an inquest, of which defendants received notice but did not attend, a judgment awarding plaintiffs $1,645,970 in damages, plus interest, was entered on April 6, 1998. Defendants moved to vacate the judgment in March 1999 for lack of personal jurisdiction. After a hearing, the district court found jurisdiction over all defendants proper and refused to vacate the default judgment. This appeal followed. Jurisdiction over CMV is not contested. For the reasons given below, we affirm the district court's jurisdictional analysis under New York state's long-arm statute, but remand so the district court may perform the required due process analysis.

## BACKGROUND

Selig, the plaintiff's principal, formed Mario Valente with his mentor, A.E. "Son-ny" Dann. Dann was initially half-partners with Selig, and Dann's company, AED, operated as plaintiff's factor. AED entered into an agreement in 1994 that provided in pertinent part:

> Confezioni PAOLO SEMERARO hereby appoint A.E.D. IMPORTS LTD. as their sole DISTRIBUTORS/IMPORTERS for the sale of all goods manufactured by them directly or indirectly in their own factories or any factories controlled or associated with them, from this date henceforth. (Minimum quantity 10000 coats × year).
>
> Confezioni PAOLO SEMERARO hereby undertake that no clothing will be offered by them or anyone acting on their behalf for sale in the U.S.A. except through A.E.D. IMPORTS LTD. their appointed DISTRIBUTORS/IMPORTERS. THIS AGREEMENT IS VALID *ONLY* FOR PRODUCTION OF MEN'S OVERCOATS.

(emphasis in the original). The agreement, made in Italy, was signed by Dann on behalf of AED and by Semeraro on behalf of CSP. The agreement bears a rubber stamp with the name of CMV over Semeraro's signature. Semeraro owns CMV and CSP, and all three are domiciled in Italy. Over time, AED's role diminished, so that eventually Mario Valente bought directly from defendants.

Mario Valente placed orders each year with the defendants for men's overcoats, which were then sold in the United States, both under the Mario Valente name and as private label goods for retailers such as Lord & Taylor and Bloomingdale's. Selig and Semeraro had a series of disagreements in late 1996 and 1997, primarily over

---

1. We note at the outset that there is some confusion as to the proper name for this defendant: Confezioni Semeraro Paolo, S.R.L., Confezioni Semeraro Paolo or Confezioni Paolo Semeraro. As the defendants themselves have used the names interchangeably, we treat all three names as representing the same defendant, designated "CSP."

prices and the quality of the coats being manufactured for Mario Valente. Selig also raised concerns about the appearance of overcoats in the United States bearing the Mario Valente name that were not sold by Mario Valente.

While working for Mario Valente, the defendants were also producing coats for AAK Ltd., a British company chaired by Maurice Kindler. AAK was the defendants' exclusive outlet in Great Britain and sold overcoats to Marks & Spencer, a British department store which also owns Brooks Brothers. AAK also sold defendants' coats in America under the Brooks Brothers label. Kindler knew of Selig's falling out with Semeraro, knew that Selig was no longer buying from Semeraro and knew that the contract between the parties gave Mario Valente the exclusive right to sell defendants' coats in the United States. Kindler set up a meeting with a Bloomingdale's buyer who previously bought coats from Mario Valente, with an eye toward diverting business away from Mario Valente and toward AAK. He also recruited his friend, Joseph Sheer, to help sell the coats. Sheer contacted Lord & Taylor and told a buyer there that he represented Kindler, and Kindler was going to be the exclusive seller of the Mario Valente line in the United States. After the phone call, Lord & Taylor terminated its relationship with Mario Valente.

In 1997, Mario Valente brought suit for breach of contract, trademark infringement and unfair competition. CMV, CSP and Semeraro were served with a summons and complaint in Italy, and, on appeal, all concede service was proper. None of the defendants responded to the summons and complaint, so Mario Valente moved for a default judgment, which was granted by Judge Kaplan on September 23, 1997. Magistrate Judge Douglas F. Eaton held an inquest on January 21, 1998,

of which defendants concede they were notified but chose not to attend. Magistrate Eaton issued a report and recommendation awarding plaintiff $1,645,970 in damages, plus interest. Defendants also concede they received the report but entered no objections. Judge Kaplan accepted the report and recommendations and entered judgment for plaintiffs on April 9, 1998.

In October 1998, Mario Valente began a proceeding in the Court of Appeals of Bari, Italy, for recognition of the Southern District's judgment. The Bari court recognized and registered the judgment in Italy in January 1999. This permitted Mario Valente to enforce the judgment in Italy.

On March 24, 1999, all defendants moved to vacate the default judgment against them in the Southern District of New York, pursuant to Fed.R.Civ.P. 55(c) and 60(b). Mario Valente cross-moved, seeking to amend its complaint and to force defendants to post a bond. Magistrate Eaton recommended denying both motions on November 19, 1999.

After receiving objections to the report, Judge Kaplan ordered and held an evidentiary hearing on the issue of whether the court could exercise personal jurisdiction over both CSP and Semeraro personally. Judge Kaplan found the court had jurisdiction over both defendants, and denied all motions. This appeal followed.

On appeal, defendants concede the district court properly exercised jurisdiction over CMV. However, defendants argue the district court erred by treating CMV, CSP and Semeraro as one entity, rather than separately considering jurisdiction over each. Defendants also argue the district court erred by failing to perform a due process analysis after finding personal jurisdiction under New York state's long-arm jurisdiction statute. For the reasons given below, we affirm the district court's find-

ings of fact and its analysis under the state's long-arm statute, but remand so that the district court may perform the necessary due process analysis.

## DISCUSSION

### Legal Standards

 "The amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.1996) (internal quotations omitted). We review district court decisions on personal jurisdiction for clear error on factual holdings and *de novo* on legal conclusions. *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 151 (2d Cir.2001).

### Jurisdiction under New York State's Long–Arm Statute

New York's long-arm jurisdiction statute, C.P.L.R. § 302, provides in pertinent part:

(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state . . .; or

3. commits a tortious act without the state causing injury to person or property within the state . . . if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. C.P.L.R. § 302 (McKinney 2001). The district court found it could exercise jurisdiction over defendants under §§ 302(a)(2) and (3)(i) and (ii) on the tort claims and under § 302(a)(1) on the contract claim.

 In exercising jurisdiction over the tort claims, the district court relied heavily on the determination that Kindler and Semeraro shared an agency relationship, which extended to Sheer as Kindler's agent. The question of whether an agency relationship exists is a mixed question of law and fact. *Cabrera v. Jakabovitz*, 24 F.3d 372, 385–86 (2d Cir.1994). Under New York law, "[p]laintiff need not establish a formal agency relationship" to establish Kindler's actions were attributable to defendants as defendants' agent. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988). Instead, Mario Valente need only show Kindler "engaged in purposeful activities in [New York] in relation to his transaction for the benefit of and with the knowledge and consent" of Semeraro and CSP and that Semeraro and CSP "exercised some control" over Kindler in the matter. *Id.* Kindler testified at the evidentiary hearing that he met with a Bloomingdale's buyer to convince the department store to buy defendants' coats from AAK instead of from Mario Valente, thus showing his activities were purposeful. The district court chose not to credit Semeraro's testimony to the contrary. In-

stead, it held "[t]here is no reason to suppose that Kindler would have told prospective U.S. customers, directly and through Sheer, that AAK had exclusive U.S. rights for Mario Valente overcoats unless Semeraro had so agreed—and no reason for Semeraro so to have agreed unless he had been assured that Kindler would make a determined effort to succeed in the United States." Given that the evidence shows Kindler knew of the severe strains in the relationship between Mario Valente and Semeraro and that Kindler knew Mario Valente still owned exclusive U.S. distribution rights, we can not say this conclusion is clearly erroneous.[2] The district court thus correctly found an agency relationship existed between Kindler and Semeraro. *Cf. Am. Baptist Churches of Metro. New York v. Galloway*, 271 A.D.2d 92, 710 N.Y.S.2d 12, 18 (1st Dept.2000) (holding that "allegations of conspiracy are permitted to connect the actions of separate defendants with an otherwise actionable tort.") (internal citations and quotation omitted).

Since Kindler acted as Semeraro's agent, Kindler's actions in New York to divert business away from Mario Valente subject the defendants to the court's jurisdiction on the tort claims under C.P.L.R. § 302(a)(2) (tortious acts committed in state permit the exercise of jurisdiction). Because we find the district court properly decided jurisdiction existed under § 302(a)(2), we do not reach the issue of whether jurisdiction could be exercised under C.P.L.R. §§ 302(a)(3)(i) or (ii).

■ On the contract claim, the district court correctly found jurisdiction exists under C.P.L.R. § 302(a)(1), which permits jurisdiction over anyone who "contracts anywhere to supply goods or services in the state." The 1994 agreement was between defendants, AED and Mario Valente. It was signed by Semeraro for CSP, over a stamp bearing CMV's name. CSP and Semeraro argue CMV was the only party to the contract, and it alone is subject to jurisdiction. The district court found all three defendants were parties to, and acted under, the agreement. That conclusion is not clearly erroneous. The district court is in the best position to judge the credibility of witnesses, and it clearly found Semeraro's testimony incredible. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574–76, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 634 (2d Cir.1996); Fed.R.Civ.P. 52(a). Goods were shipped to New York under the contract. As there was a contract to ship goods to New York, entered into by plaintiff and defendants, and goods were shipped under that contract, the district court correctly concluded jurisdiction was proper. *See Drake Am. Corp. v. Speakman Co.*, 144 A.D.2d 529, 534 N.Y.S.2d 679, 680 (2d Dept.1988).

*Due process analysis*

■ The district court erred in failing to perform a federal due process analysis. In deciding a question of personal jurisdiction, district courts must conduct a two-part analysis, looking first to the state's long-arm statute and then analyzing whether jurisdiction comports with federal due process. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999). Due process analysis opens with a minimum contacts inquiry.

2. The district court rightly determined that through their course of dealing, the parties substituted Mario Valente for AED as the exclusive distributor of defendants' overcoats. From the time AED ceased doing business to the events giving rise to this dispute, the defendants did not sell their overcoats to anyone in the United States except Mario Valente. *See, e.g.*, N.Y. U.C.C. § 2–208(1) (McKinney 1993).

**38**

Specific jurisdiction is determined by first asking if the claim arises out of or relates to defendants' contacts with the state, and then showing defendants purposefully availed itself of the privilege of doing business in the forum so that defendant could reasonably foresee being haled into the forum's courts. *Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 242–3 (2d Cir. 1999). It is not clear from the record before us whether CSP or Semeraro purposefully availed themselves of the privilege of doing business in New York, or if the district court considered the three defendants to be the same entity. We find the district court is the proper forum for such an inquiry in the first instance. As the finder of fact, the district court is in the best position to make the necessary credibility judgments and discern what the facts are. *Anderson,* 470 U.S. at 564, 105 S.Ct. 1504; *Donato,* 96 F.3d at 634. We therefore remand.

### CONCLUSION

For the reasons given above, we affirm the district court's findings that it may exercise jurisdiction over both the torts and contracts claims under New York's long-arm statute. We remand, however, to allow the district court to perform the necessary federal due process analysis.

Also outstanding is a motion by Mario Valente pursuant to Fed. R.App. P. 38 to impose sanctions against defendants for bringing a frivolous appeal. As described above, appellants raised a valid claim on appeal, so the appeal was clearly not frivolous. The motion is thus denied. Each party shall bear its own costs.