**MARIO VALENTE COLLEZIONI, LTD., Plaintiff,**

v.

**CONFEZIONI SEMERARO PAOLO, S.R.L., et al., Defendants.**

**No. 97 CIV 2008 LAK.**

United States District Court, S.D. New York.

Dec. 6, 2001.

Daniel H. Greenberg, for Plaintiff.

Kim Steven Juhase, Steven Rondos, Raia & Rondos, New York City, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This action between plaintiff Mario Valente Collezioni, Ltd., and Semeraro Paolo, an Italian citizen who personally does business under the name Confezioni Semeraro Paolo, S.R.L. ("CSP"), and his Italian company, Confezioni Mario Valente–Firenze, S.R.L. ("CMV"), is before this Court on remand from the Court of Appeals.

Defendants moved, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, to vacate the default judgment this Court entered against them on the grounds that, *inter alia*, the judgment was void because it was rendered in the absence of personal jurisdiction. This Court, after conducting an evidentiary hearing, held that the defendants Semeraro, CSP, and CMV were subject to the personal jurisdiction of this Court under the New

York long arm statute.[1] Defendants appealed that decision with respect to Semeraro and CSP. The Second Circuit upheld this Court's determination that the conduct of the defendants and their agents rendered Semeraro and CSP within the New York long arm statute, but remanded for a determination as to whether this exercise of personal jurisdiction comported with constitutional due process.[2] The facts in this case are well summarized in the prior opinions, and only those relevant to the due process inquiry need be recited here.

### I. New York Long Arm Jurisdiction

In its opinion of September 8, 2000, this Court found that its exercise of personal jurisdiction over Semeraro and CSP (collectively "Semeraro/CSP") on plaintiff's tort claims was proper as a matter of New York law because Semeraro/CSP, through agents Maurice Kindler and Joseph Sheer, committed tortious acts in New York, bringing Semeraro/CSP within the scope of CPLR § 302(a), subd. 2.[3] The Second Circuit agreed.[4] Additionally, because they committed tortious acts outside New York that caused injury within the state,[5] this Court found Semeraro/CSP subject to this Court's personal jurisdiction under CPLR § 302(a), subd. 3.[6] With respect to

plaintiff's contract claims, this Court found that Semeraro/CSP was party to an exclusive distributorship contract that called for CSP, that is to say, Semeraro personally, to supply goods to the plaintiff in New York.[7] Because it is the breach of this contract that gives rise to plaintiff's claim, Semeraro/CSP is subject to *in personam* jurisdiction here. Again, the Second Circuit agreed.[8]

This Court notes that to the extent defendants argue that this Court erred in considering CMV, CSP, and Semeraro as one entity, they misread this Court's prior opinion. Semeraro and CSP of course are a single entity because CSP is nothing more than a trade name under which Semeraro conducts business. But the Court respected the corporate existence of CMV, of which Semeraro is the sole owner. In any case, it separately found that each defendant was subject to *in personam* jurisdiction, not because they were one entity, but because each was responsible for acts that made it amenable to *in personam* jurisdiction under the New York long arm statute. Semeraro personally signed the 1994 contract, and he did so on behalf of CSP. In substance, then, he signed in his individual capacity. In its opinion in this case, the Second Circuit held that this

---

1. *See Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 115 F.Supp.2d 367 (S.D.N.Y.2000), *aff'd in part* and *remanded in part*, 264 F.3d 32 (2d Cir.2001).

2. *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 37 (2d Cir.2001).

3. *Mario Valente*, 115 F.Supp.2d at 377.

4. *Mario Valente*, 264 F.3d at 37 ("Since Kindler acted as Semeraro's agent, Kindler's actions in New York to divert business away from Mario Valente subject the defendant to the court's jurisdiction on the tort claims under C.P.L.R. § 302(a)(2).").

5. Specifically, the agreement between Semeraro and his agent, Maurice Kindler, to engage in behavior that constituted unfair competition and trademark infringement, although entered into outside of New York, caused injury to the plaintiff in New York.

6. *Mario Valente*, 115 F.Supp.2d at 377.

7. *Id.*

8. *Mario Valente*, 264 F.3d at 37 ("On the contract claim, the district court correctly found jurisdiction exists under C.P.L.R. § 302(a)(1), which permits jurisdiction over anyone who 'contracts anywhere to supply goods or services in the state.' ").

Court's finding that Semeraro, CSP, and CMV all were parties to the 1994 contract was not clearly erroneous.[9]  Because there was a contract among plaintiff, Semeraro, CSP, and CMV to ship goods to New York and because goods were shipped to New York under that contract, jurisdiction over Semeraro/CSP is proper on the contract claim.[10]  Semeraro/CSP shared an agency relationship with Kindler, and this relationship extended to Sheer who functioned as Kindler's agent.  Based on the record before it, including witness testimony from the evidentiary hearing, this Court concluded that Semeraro/CSP had knowledge of Kindler's activities in New York, benefitted or expected to benefit from those activities, and exercised some control over Kindler with respect to those activities. As a result, this Court found Semeraro/CSP subject to *in personam* jurisdiction on the tort, as well as the contract, claims under New York's long arm statute.

## II.  Due Process

The Supreme Court's opinion in *International Shoe Co. v. Washington*[11] defines the extent to which the Due Process Clause permits a court to exercise personal jurisdiction over a nondomicilliary.  Prior to *International Shoe, in personam* jurisdiction had focused on the physical presence of a potential defendant in the forum state.  In *International Shoe,* the Supreme Court held that the Due Process Clause permits a court to exercise jurisdiction over a defendant so long as the defendant had "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[12]  The Court explained that this test was neither "mechanical or quantitative," but rather depended on the "quality and nature" of the defendant's contacts with the forum state.[13]

The minimum contacts test of *International Shoe* sets the outer limits of personal jurisdiction that may be exercised under the Constitution.  New York, however, has not seen fit to allow its courts to exercise the full range of personal jurisdiction permitted by the Constitution.  As courts repeatedly have held and as defendant concedes, rather than codifying the *International Shoe* minimum contacts test, the New York legislature enacted a narrower long arm statute, CPLR 302, which requires that a defendant's minimum contacts with New York meet one of the additional enumerated factors before a New York court will be permitted to exercise specific personal jurisdiction over that defendant.[14]  In consequence, any exercise of jurisdiction consistent with CPLR 302 *a fortiori* is consistent with due process.  Nevertheless, for the sake of clarity, this Court now separately turns to the constitutionality of the exercise of *in personam* jurisdiction over Semeraro/CSP on these claims.

**9.**  *Id.*

**10.**  *Id.*

**11.**  326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

**12.**  *Id.* at 316, 66 S.Ct. 154.

**13.**  *Id.* at 319, 66 S.Ct. 154.

**14.**  *See Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 764 n. 6 (2d Cir.1983) (citing *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 459–60, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965)); *Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GmbH & Co.,* 150 F.Supp.2d 566, 572 (S.D.N.Y.2001).  *See also* Def. Mem. at 3 ("New York's long arm statute, N.Y. CPLR 302, does not go as far as due process permits.").

### A. Minimum Contacts and Purposeful Availment

■ As the panel opinion in this case noted, due process analysis opens with a minimum contacts inquiry. This Court first must consider whether plaintiff's claim arose out of or relates to the defendants' contacts with New York. If so, it then must consider whether the defendants purposefully availed themselves of the privilege of doing business in New York so that they reasonably could have foreseen being haled into a court of law in New York.[15] The purposeful availment inquiry "ensures that a defendant will not be haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts."[16]

#### 1. Tort Claims

■ As noted in this Court's prior opinion, the tort claims arise out of defendants' contacts with New York because Kindler, as Semeraro/CSP's agent and at Semeraro's direction, committed the torts in New York. Kindler, on his own and through Sheer, contacted Bloomingdale's and Lord & Taylor in New York and told these two stores, which previously had purchased Mario Valente coats from the plaintiff, that the plaintiff either had gone out of business or had lost the Mario Valente label. These acts establish minimum contacts with New York, and they also satisfy the purposeful availment prong of the constitutional due process inquiry. By sending an agent to New York to perform these acts, Semeraro/CSP purposefully availed itself of the privilege of doing business in New York and reasonably could have foreseen that Semeraro/CSP could be made to answer for these tortious acts in front of a New York court. These contacts with the State of New York, purposefully set in motion by Semeraro/CSP, were by no means "random," "fortuitous," or "attenuated."[17] They created a "relationship among the defendant[s], the forum, and the litigation"[18] sufficient to satisfy the constitutional requirements for the exercise of specific *in personam* jurisdiction.

#### 2. Contract Claim

■ On the contract claim, the constitutional case for the exercise of *in personam* jurisdiction is even stronger. The contract claim arises out of the breach of a contract to sell overcoats in New York and is thus related to the defendants' contacts with the state. Additionally, by becoming party to such a contract, Semeraro/CSP purposefully availed himself of the privilege of doing business in the State of New York. Despite his location in Italy, it reasonably was foreseeable that the he could be haled into a New York court based on the contract to do business with plaintiff, a New York company, in New York. Again, the relationship between Semeraro/CSP, the State of New York, and this litigation satisfies the requirements of due process.[19]

### B. Reasonableness and the Interest Balancing Test

■ "Once it is determined that a defendant purposefully established minimum

---

15. *See Mario Valente,* 264 F.3d at 38.

16. *Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

17. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

18. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)); *Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 242 (2d Cir.1999); *Metro. Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 567 (2d Cir.1996).

19. *See supra* note 17.

contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' "[20] In deciding whether an exercise of personal jurisdiction over the defendants in this case offends due process, this Court considers, *inter alia,* the burden on the defendants, New York's interest in adjudicating the dispute, and the plaintiff's interest in obtaining convenient and effective relief.[21]

Subjecting Semeraro/CSP to the jurisdiction of the federal courts in New York would not "make litigation 'so gravely difficult and inconvenient' that [he would be] at a 'severe disadvantage' in comparison to [the plaintiff]."[22] While the Supreme Court has indicated that there may be circumstances in which the level of inconvenience to a defendant would make the exercise of personal jurisdiction unconstitutional,[23] any inconvenience to the defendant in this case does not rise to that level. Semeraro/CSP entered into a contract to sell coats in New York, and Kindler, an agent of Semeraro/CSP, and Kindler's agent Sheer, met with potential buyers in New York. The defendants secured New York counsel soon after being served in this suit.[24] While there may be a forum more convenient for Semeraro/CSP, any inconvenience that might have arisen out of litigation in this Court was outweighed by other factors.[25]

It cannot be said that New York has no "legitimate interest in holding [Semeraro/CSP] answerable on a claim related to" the actions taken in New York so as to make the exercise of personal jurisdiction under New York's long arm statute unconstitutional.[26] New York has a strong interest in holding Semeraro/CSP accountable for the injuries to plaintiff, a New York corporation, that arise from the contacts with New York. Additionally, as the Second Circuit has noted, it is appropriate for this Court to consider "where witnesses and evidence are likely to be located."[27] Because many of the potential witnesses, had there been a trial rather than a default, such as the buyers at Bloomingdale's and Lord & Taylor, would have been located in New York, this factor weighs in favor of this Court's exercise of personal jurisdiction. Finally, the plaintiff's interest in obtaining convenient and effective relief also weighs in favor of this Court's exercise of personal jurisdiction over Semeraro/CSP. Defendants themselves, through their refusal to enter appearances and

**20.** *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174 (quoting *International Shoe,* 326 U.S. at 320, 66 S.Ct. 154).

**21.** *See Kernan,* 175 F.3d at 244 (internal citations omitted). The other two factors in this balancing test, "the interstate judicial system's interest in obtaining the most efficient resolution of the controversy" and "the shared interest of the states in furthering social substantive policies," see *id.,* do not apply with the usual force as the alternate forum for this controversy is not the court of another state. This Court does note, however, that to the extent that an Italian court has recognized and registered the default judgment entered against defendants in this Court, *see Mario Valente,* 115 F.Supp.2d at 369, a modified version of these factors would support this Court's exercise of personal jurisdiction over Semeraro and CSP.

**22.** *Burger King,* 471 U.S. at 479, 105 S.Ct. 2174.

**23.** *See, e.g., McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

**24.** *See Mario Valente,* 115 F.Supp.2d at 371.

**25.** *See Kernan,* 175 F.3d at 244.

**26.** *Burger King,* 471 U.S. at 482, 105 S.Ct. 2174 (internal quotations omitted).

**27.** *Metro. Life,* 84 F.3d at 574.

their ever-changing stories to this Court[28] and by requiring plaintiff to expend money in order to enforce this Court's judgment in Italy, repeatedly have frustrated plaintiff's interest in obtaining convenient and effective relief.

While Semeraro/CSP may be far from home, this Court's exercise of specific *in personam* jurisdiction here does not offend the traditional notions of fair play and substantial justice. This is not, as defendants contend, a case in which a plaintiff seeks to hold a defendant liable merely for placing an item into the stream of commerce. The defendants signed a contract to be performed in New York and then caused their agents to go to New York to engage in acts that interfered with that contract and with plaintiff's right to be free from trademark infringement and unfair competition in New York. Because of the quality and nature of Semeraro/CSP's contacts with the State of New York, this Court's exercise of *in personam* jurisdiction over both defendants complies with the strictures of constitutional due process.

### III. Conclusion

For the reasons stated above, this Court finds that its exercise of *in personam* jurisdiction over Semeraro and CSP comports with due process. Accordingly, as stated in this Court's opinion of September 8, 2000, the defendants' motion to vacate their default and the default judgment entered against them is denied in all respects.

SO ORDERED.

---

**28.** *Mario Valente,* 115 F.Supp.2d at 370–71.