**Lillian KERNAN and Harold Kernan, Plaintiffs–Appellees,**

v.

**KURZ–HASTINGS, INC., Defendant– Third–Party Plaintiff–Appellee,**

v.

**Forbes Products Corporation, Third– Party Defendant–Appellee,**

and

**Navitas Company, Ltd., Third–Party Defendant–Appellant.**

**Docket No. 98–7827.**

United States Court of Appeals, Second Circuit.

Argued Feb. 26, 1999.

Decided April 15, 1999.

Robert W. Littleton, Wilson, Elser, Moskowitz, Edelman & Dicker, New York, N.Y. (Bruce Ainbinder and Michael Bai, on the brief), for third-party defendant-appellant.

Gordon D. Tresch, Feldman, Kieffer & Herman, LLP, Buffalo, N.Y. (Ann W. Herman, on the brief), for defendant-third-party plaintiff-appellee.

Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, Buffalo, NY, for plaintiffs-appellees.

Kevin M. O'Neill, Kamysz, Cotter, O'Neill & Hamberger, Buffalo, NY, for third-party-defendant-appellee.

Before: WALKER, POOLER, and HEANEY,* Circuit Judges.

JOHN M. WALKER, Jr., Circuit Judge.

This case presents the question of whether a New York court has personal jurisdiction over a Japanese manufacturer of a machine said to have caused plaintiff's injuries in circumstances where the manufacturer's distributor in Pennsylvania sold the machine to plaintiff's employer in New York. Third-party defendant Navitas Company, Ltd. appeals from an order of the United States District Court for the Western District of New York (Carol E. Heckman, *Magistrate Judge*) denying its motion pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the third-party indemnity action against it for lack of personal jurisdiction. In accordance with 28 U.S.C. § 636(c), all parties to this action consented to having Magistrate

* The Honorable Gerald W. Heaney, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Judge Heckman conduct all proceedings in the case. For the reasons that follow, we affirm.

## BACKGROUND

This case began as a product liability action arising out of personal injuries allegedly sustained by plaintiff Lillian Kernan on October 15, 1992, while she was operating a hot stamping press at Forbes Products Corporation in Dansville, New York. Plaintiff and her husband Harold Kernan filed the action on September 20, 1995 in New York State Supreme Court against defendant-third-party plaintiff, Kurz–Hastings, Inc. On October 20, 1995, Kurz–Hastings, a Pennsylvania corporation that sold the hot stamping press in question to Forbes, removed the action to the United States District Court for the Western District of New York on the basis of that court's diversity jurisdiction. *See* 28 U.S.C. § 1332.

On November 27, 1996, Kurz–Hastings filed a third-party complaint for contribution and indemnification against Forbes as Ms. Kernan's employer, and against Navitas Co., Ltd., the Japanese manufacturer of the press in question that sold and shipped the press to Kurz–Hastings. Navitas filed an answer to the third-party complaint on March 11, 1997, in which it asserted several affirmative defenses, including lack of personal jurisdiction. Navitas admitted that it manufactured, partially designed, and assembled the hot stamping press.

On October 31, 1997, Navitas moved to dismiss the third-party complaint against it for lack of personal jurisdiction. The district court denied the motion and certified the question to this court pursuant to 28 U.S.C. § 1292(b). We accepted the certification and this appeal followed.

## DISCUSSION

I. *The Motion to Dismiss in the District Court*

The motion to dismiss by Navitas in the district court was accompanied by an affidavit from the company's President, Nubuo Arita, stating that Navitas is a corporation existing under the laws of Japan with its principal place of business in Japan; that Navitas is not licensed or registered to do business in New York, nor has it ever directly transacted or solicited business in New York; and that Navitas has never provided any services nor entered into any contract in New York.

Arita's affidavit states that, with respect to the printing press at issue, Navitas had an oral agreement with Kurz–Hastings to manufacture the model of printing press at issue but had no specific "knowledge of what would become of the subject press machine after it was sold to Kurz–Hastings in Pennsylvania, beyond the general knowledge that Kurz Hastings would resell it somewhere in Pennsylvania or one of the other 49 states in the United States."

In opposition to the motion to dismiss, Kurz–Hastings submitted the affidavit of its Vice President of Sales, Joseph D. McNamara. The McNamara affidavit states that on April 22, 1976, Kurz–Hastings entered into a contract with Navitas's corporate predecessor, Tahei Industries Co., Ltd., under which Tahei granted Kurz–Hastings the exclusive right to sell and promote Tahei's products in North America; and that in January 1979, Kurz–Hastings sold the machine in question to Forbes. Attached to the McNamara affidavit was a copy of the exclusive sales agreement. In addition to specifying that Kurz–Hastings would have the exclusive right to sell Tahei's products in any country other than 17 specified Asian countries, the agreement provided for the exchange of information for the purposes of developing or producing new machines and for either party to notify the other three months in advance of revising prices.

Pursuant to the agreement, between 1976 and 1981, Kurz–Hastings sold 168 hot stamping presses manufactured by Tahei;

however, the record does not specify where these machines (other than the machine at issue) were sold. Additional machines were sold after 1981, but the record contains no further information as to those sales.

In a thorough opinion, Magistrate Judge Heckman denied Navitas's motion to dismiss, holding that Navitas was subject to personal jurisdiction in New York pursuant to the state's long-arm statute, N.Y.C.P.L.R. § 302(a)(3)(ii), and that this exercise of jurisdiction was consistent with the requirements of due process. *See Kernan v. Kurz–Hastings, Inc.*, 997 F.Supp. 367, 374, 379 (W.D.N.Y.1998). This interlocutory appeal followed.

## II. *The Appeal*

■■■ Some basic principles govern an appeal from a district court's grant or denial of personal jurisdiction. "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994)). Where, as here, no evidentiary hearing has been held but the parties have conducted extensive discovery into the third-party defendant's contacts with the forum state, " 'the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant.' " *Id.* at 567 (alteration in original) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990)). Thus, in reviewing *de novo* the magistrate's denial of Navitas's motion to dismiss for lack of personal jurisdiction, we accept as true all of Kurz–Hastings's averments of jurisdictional facts. *See id.; see also CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364–65 (2d Cir.1986).

■■■ It is by now well-established that the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with "federal law" entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee.

*Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir.1963). Accordingly, a district court must conduct a two-part inquiry when considering a motion to dismiss for lack of personal jurisdiction. "First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." *Metropolitan Life*, 84 F.3d at 567 (citing *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir.1990)).

### A. *New York's Long–Arm Statute*

The parties agree that the only possible basis for jurisdiction over Navitas under New York's long-arm statute is § 302(a)(3)(ii). It states in pertinent part:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

. . .

3. commits a tortious act without the state causing injury to person or property within the state, . . . if he

. . .

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

§ 302(a)(3)(ii). The parties agree further that the analysis of whether jurisdiction is proper under § 302(a)(3)(ii) reduces to the question of whether Navitas "expect[ed] or should reasonably [have] expect[ed]" that

its actions would have consequences in New York.

■ "The test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective rather than subjective one." *Allen v. Auto Specialties Mfg. Co.,* 45 A.D.2d 331, 357 N.Y.S.2d 547, 550 (3d Dep't 1974). New York courts have sought to avoid conflict with federal constitutional due process limits on state court jurisdiction by applying the "reasonable expectation" requirement in a manner consistent with United States Supreme Court precedent. *See In re DES Cases,* 789 F.Supp. 552, 570–71 (E.D.N.Y.1992) (collecting cases). Thus, New York courts have asserted that the simple likelihood or foreseeability "that a defendant's product will find its way into New York does not satisfy this element, and that purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court is required." *Id.; see, e.g., Martinez v. American Standard,* 91 A.D.2d 652, 457 N.Y.S.2d 97, 98–99 (2d Dep't 1982) (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)), *aff'd,* 60 N.Y.2d 873, 470 N.Y.S.2d 367, 458 N.E.2d 826 (1983); *Schaadt v. T.W. Kutter, Inc.,* 169 A.D.2d 969, 564 N.Y.S.2d 865, 866 (3d Dep't 1991) ("[I]t is not enough that a defendant foresaw the possibility that its product would find its way here; foreseeability must be coupled with evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market."); *see also Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988) (noting requirement under § 302(a)(3)(ii) that "the defendant's activities here were purposeful").

■ Judge Heckman, after reviewing relevant New York state case law, held that Kurz–Hasting's agreement to sell Na-

vitas's products in (among other places) the United States was sufficient in and of itself to support a finding of " 'foreseeability . . . coupled with a purposeful act' " for purposes of § 302(a)(3)(ii). *See Kurz–Hastings,* 997 F.Supp. at 374 (alteration in original) (quoting *Cortlandt Racquet Club, Inc. v. Oy Saunatec, Ltd.,* 978 F.Supp. 520, 523 (S.D.N.Y.1997)). We agree.

In *Schaadt v. T.W. Kutter, Inc.,* the plaintiff, who was injured when her hand was caught in a meat packaging machine, brought an action in New York against the German manufacturer of the machine as well as the Massachusetts company that sold the machine in the United States. After the trial court denied the German manufacturer's motion for summary judgment on the ground of lack of personal jurisdiction, the Appellate Division, Third Department, reversed. *See id.,* 564 N.Y.S.2d at 866. The *Schaadt* court held that plaintiff had failed to adduce evidence that the German company had attempted, directly or indirectly, to serve the New York market, and that the sole fact that the company had sold its products to a Massachusetts company, which then sold the machines throughout the United States, was insufficient to satisfy § 302(a)(3)(ii)'s "reasonable expectation" requirement. *See id.*

The First Department reached a different result in *Kappas v. T.W. Kutter, Inc.,* 192 A.D.2d 402, 596 N.Y.S.2d 361 (1st Dep't 1993). In *Kappas,* another person injured by a meat packaging machine brought suit against the same Massachusetts company sued in *Schaadt,* which then brought a third-party claim against the same German manufacturer. The First Department, however, found that summary judgment against the German manufacturer was inappropriate given the existence of issues of fact as to whether the manufacturer had sufficient contacts with New York so as to be subject to long-arm jurisdiction. The *Kappas* court found that the German manufacturer had entered into a written contract, after the operative

events in *Schaadt,* which designated the Massachusetts company as the "exclusive distributor and promoter" of the German machines in the United States. *See Kappas,* 596 N.Y.S.2d at 362. This finding, coupled with the finding that the Massachusetts company was to repair and service machines sold in New York, precluded the entry of summary judgment in the German manufacturer's favor. *See id.*

Finally, the case of *Adams v. Bodum Inc.,* 208 A.D.2d 450, 617 N.Y.S.2d 316 (1st Dep't 1994) is consistent with *Kappas.* In *Adams,* the First Department found that a foreign coffee maker manufacturer's exclusive distributorship agreement with a domestic distributor, covering all of the United States, provided a sufficient basis for finding that the manufacturer should have reasonably expected that New York residents would be purchasing and using its product. *See id.* at 316.

Although it is admittedly a close question, we agree with Judge Heckman that § 302(a)(3)(ii) permits the exercise of personal jurisdiction over Navitas on the facts of this case. As already noted, Kurz–Hastings sold the allegedly defective machine to Forbes in New York pursuant to an "exclusive sales rights" agreement with Navitas. That agreement not only gave Kurz–Hastings the right to sell Navitas's machines anywhere outside of seventeen specified Asian countries, it also provided for the exchange of information relevant to product development, as well as pricing information (if either party intended to revise prices). The sales rights agreement makes this case more like *Adams* and *Kappas,* and distinguishes the *Schaadt* case relied upon by Navitas. In addition, Navitas's President, Mr. Arita, admitted to the existence of an oral agreement to manufacture machines for sale by Kurz–Hastings, a Pennsylvania corporation, and that Navitas had "general knowledge" that Kurz–Hastings would resell the machines in Pennsylvania and throughout the United States.

These facts, taken together, convince us that Navitas did indeed attempt to serve the New York market, even if it did so indirectly; that the agreement did not specify New York, but instead, with an exception for certain Asian countries, permitted the sale of Navitas's hot stamping presses throughout the world, cannot serve to defeat jurisdiction. In short, Kurz–Hastings presented evidence sufficient to satisfy § 302(a)(3)(ii)'s reasonable expectation requirement.

B. *Due Process*

As we have recently stated,
The due process clause of the Fourteenth Amendment permits a state to exercise personal jurisdiction over a non-resident defendant with whom it has "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940) and *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). In determining whether minimum contacts exist, the court considers "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)).

. . .

To establish the minimum contacts necessary to justify "specific" jurisdiction, the [plaintiff] first must show that [his] claim arises out of or relates to [defendant's] contacts with [the forum state]. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The [plaintiff] must also show that [the defendant] "purposefully availed" [himself] of the privilege of doing business in

[the forum state] and that [the defendant] could foresee being "haled into court" there. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

If the [plaintiff] satisf[ies] these requirements, the court also considers whether the assertion of jurisdiction "comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of a particular case." *Metropolitan Life*, 84 F.3d at 568 (quoting *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154).

*Chew v. Dietrich*, 143 F.3d 24, 28 (2d Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 373, 142 L.Ed.2d 308 (1998) (alteration in original) (quoting *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1027 (2d Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998)). Applying these standards in the instant case, we conclude that Navitas had sufficient minimum contacts with New York to support the exercise of jurisdiction and that the assertion of jurisdiction is reasonable under the circumstances.

### 1. *Minimum Contacts*

First, we agree with the magistrate judge that Kurz–Hastings established that there is "specific" jurisdiction over Navitas in New York because the suit "arises out of" Navitas's contacts with New York—namely the sale of the allegedly defective press to Kurz–Hastings, which then sold the machine to Forbes in New York. *See Helicopteros*, 466 U.S. at 414 & n. 8, 104 S.Ct. 1868.

Second, for the reasons stated above, *see* Part II.A. *supra*, we conclude that Kurz–Hastings has shown that Navitas has "purposefully avail[ed] itself of the privilege of conducting activities within [New York]." *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. 1228. Despite Navitas's claims to

the contrary, this case is plainly distinguishable from the Supreme Court's seminal personal jurisdiction decision in *World–Wide Volkswagen*. In *World–Wide Volkswagen*, the Supreme Court declared that " 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause," and held that no personal jurisdiction existed in Oklahoma over a foreign automobile wholesaler who sold an Audi automobile in New York, only to find that the car was driven by New York residents to Oklahoma, where it was involved in an accident. *Id.* at 295–99, 100 S.Ct. 559. In that case, the Supreme Court found jurisdiction improper because there was no evidence in the record that petitioners had attempted "to serve, directly or indirectly, the market for its product" in the forum state. *Id.* at 297, 100 S.Ct. 559. Here, by contrast, the "exclusive sales rights" agreement, which contemplates that Kurz–Hastings will sell Navitas's machines in North America and throughout the world, serves as evidence of Navitas's attempt to serve the New York market, albeit indirectly.

*Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), is not to the contrary. In *Asahi*, personal jurisdiction was not upheld after a plurality of the Court held that to satisfy the minimum contacts prong of the due process inquiry, a manufacturer must do more than merely place a product into the "stream of commerce." *See id.* at 112, 107 S.Ct. 1026. Instead, the plurality stated, a "finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State.*" *Id.* at 112, 107 S.Ct. 1026 (emphasis in original) (citing *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174).

The concurring members of the Court joined the plurality's decision in *Asahi* only to the extent that it held that allowing jurisdiction on the facts of that case would not "comport with 'fair play and substantial justice,'" *id.* at 116, 107 S.Ct. 1026

(Brennan, J., concurring in part and concurring in the judgment) (quoting *International Shoe*, 326 U.S. at 320, 66 S.Ct. 154), and would be "unreasonable and unfair," *id.* at 121, 107 S.Ct. 1026 (Stevens, J., concurring in part and concurring in the judgment), thus making the "minimum contacts" inquiry unnecessary to a finding that the exercise of jurisdiction was unconstitutional. Justice Brennan's concurring opinion, joined by three members of the Court, would have established a "stream of commerce" standard in products liability cases that allowed jurisdiction over any manufacturer which places its product in the "stream of commerce" and is aware that its product may be sold in the forum state. *Id.* at 116–17, 107 S.Ct. 1026.

We need not adopt either view of the "stream of commerce" standard, however; even assuming *arguendo* that we were to adopt the *Asahi* plurality's more restrictive view, we would still conclude for the reasons already stated that the "exclusive sales rights" agreement constitutes the type of purposeful action sufficient to support a finding of minimum contacts.

## 2. *Reasonableness*

 Given our conclusions that Kurz–Hastings has demonstrated that Navitas had the minimum contacts necessary to justify specific jurisdiction and that Navitas "purposefully availed" itself of the privilege of doing business in New York, we now turn to whether the assertion of jurisdiction "comports with 'traditional notions of fair play and substantial justice'— that is, whether it is reasonable under the circumstances of [this] case." *Metropolitan Life*, 84 F.3d at 568 (quoting *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154); *see also Chaiken*, 119 F.3d at 1028. We consider five "reasonabless" factors:

(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial's

system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering social substantive policies. *Metropolitan Life*, 84 F.3d at 568 (citing, *inter alia, Asahi*, 480 U.S. at 113–14, 107 S.Ct. 1026, and *Burger King*, 471 U.S. at 476–77, 105 S.Ct. 2174). These factors weigh in favor of exercising jurisdiction in this case.

### a. *Burden on the Defendant*

There would, of course, be a substantial burden imposed on Navitas, a Japanese manufacturer, if it is forced to defend a suit in New York. *See Asahi*, 480 U.S. at 114, 107 S.Ct. 1026 (noting that courts must give "significant weight" to "unique burdens placed upon one who must defend oneself in a foreign legal system"). That said, we have recently noted that "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Metropolitan Life*, 84 F.3d at 574. Moreover, as Navitas would be subject to jurisdiction if an indemnification action had been filed in the Eastern District of Pennsylvania (where Kurz–Hastings resides), this factor alone, while it weighs in Navitas's favor, cannot overcome Kurz–Hastings's threshold showing of minimum contacts.

### b. *Interests of the Forum*

We find that New York's interest in the dispute between Kurz–Hastings and Navitas is a strong one. The person who was injured by the allegedly defective hot stamping press is a New York resident, and there seems to be no dispute that New York product liability and negligence law apply in this case. Thus, this factor weighs in favor of the reasonableness of the court's exercise of jurisdiction over Navitas.

### c. *Interests of the Plaintiff in Obtaining Convenient and Effective Relief*

Kurz–Hasting's interest in bringing Navitas into the New York case is a strong

one. If we were to determine that New York could not exercise personal jurisdiction over Navitas, Kurz–Hastings would be forced to bring a separate action against Navitas, relitigating the issues in a second forum, presumably the Pennsylvania district court. Moreover, Kurz–Hastings has argued persuasively that, as the distributor of the allegedly defective machine, it lacks the technical expertise possessed by Navitas that is necessary to defend the issues of design or manufacturing defects in the New York action. We thus conclude that this factor also weighs in favor of a finding of personal jurisdiction over Navitas.

d. *Efficient Administration of Justice*

In evaluating this factor, we "generally consider where witnesses and evidence are likely to be located." *Metropolitan Life,* 84 F.3d at 574. As Judge Heckman noted, the allegedly defective machine is located in New York, the site of the accident. And, while the design and manufacturing processes took place in Japan, the evidence relating to those processes is likely to be documentary in nature. Again, the alternative to adjudication of the entire dispute in New York would be the inefficient holding of separate trials in New York and Pennsylvania. Accordingly, we conclude that this factor also weighs in Kurz–Hasting's favor.

e. *Policy Arguments*

"This factor requires us to consider the common interests of the several states in promoting substantive social policies." *Id.* at 575. The parties have not suggested or shown that any substantive social policies would be furthered or undermined by permitting the case against Navitas to go forward in New York, rather than being the subject of a second trial in Pennsylvania. This factor thus does not weigh in either party's favor.

Upon reviewing our consideration of the "reasonableness factors" we note that the first factor tips in Navitas's favor, whereas

the second, third and fourth factors weigh in favor of the exercise of jurisdiction. In these circumstances, Judge Heckman correctly concluded that exercising personal jurisdiction over Navitas would not offend "traditional notions of fair play and substantial justice," and properly denied Navitas's motion to dismiss the Kurz–Hasting's third-party action against it for lack of personal jurisdiction.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.