FORTIES B LLC and Tanaz Eshaghian, Plaintiffs,

v.

AMERICA WEST SATELLITE, INC. d/b/a Pars TV Network, Persian Broadcast Service Global, Inc. d/b/a Pars TV Network, Amir Shadjareh, Fariborz Abbassi, Azadi TV Incorporated, XYZ Company, and John Doe, Defendants.

No. 09 Civ. 8583(JSR).

United States District Court, S.D. New York.

July 23, 2010.

Gloria Tsui–Yip, Howard Charles Miskin, Yasmin Pooyan, Miskin & Tsui–Yip LLP, New York, NY, for Plaintiffs.

Bijan Amini, Matthew David Kane, Storch, Amini & Munves, P.C., New York, NY, for Defendants.

### MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

This Memorandum Order (1) sets forth the reasons for the Court's May 19, 2010, 2010 WL 2075927, ruling granting defendants' motion to dismiss for lack of personal jurisdiction over Persian Broadcast Service Global, Inc. and (2) denies defendant Amir Shadjareh's motion for summary judgment dismissing the claim against him for copyright infringement insofar as that claim alleges that he was vicariously liable for such infringement, but otherwise grants his motion.

By way of background, plaintiffs Tanaz Eshaghian and Forties B LLC directed and produced a film about transsexuals and homosexuality in Iran entitled "Be Like Others." Plaintiffs' original complaint, filed on October 7, 2009, alleged that defendants America West Satellite, Inc. ("America West") and Amir Shadjareh, as well as other unnamed "John Doe" defendants, broadcast without authorization an improperly copied and mutilated version of this film via satellite television stations in May 2008, thus violating the Copyright Act and the Lanham Act, tortiously interfering with plaintiffs' contractual relationships, and intentionally inflicting emotional distress upon Eshaghian. On February 19, 2010, plaintiffs filed an amended complaint adding causes of action identical to those raised in the original complaint against defendants Persian Broadcast Service Global, Inc. ("PBSG"), Fariborz Abbassi, and Azadi TV Inc.

On April 6, 2010, Shadjareh, America West, and PBSG moved to dismiss the amended complaint for failure to state a claim and for lack of personal jurisdiction over PBSG. By a Memorandum Order dated May 19, 2010, the Court granted these motions in part and denied them in part, dismissing all claims against the moving defendants with the exception of the copyright infringement and mutilation claims (Counts I and II) against defendants Shadjareh and America West, with opinion to follow on the dismissal of PBSG for lack of personal jurisdiction.[1]

On June 8, 2010, plaintiffs filed a purported notice of voluntary dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), which, following briefing, was converted into a motion. By a Memorandum Order dated June 17, 2010, the Court denied the motion and vacated the purported dismissal as to defendants Shadjareh and America West, but granted the motion as to defendants Abbassi and Azadi TV and dismissed them without prejudice.

---

1. The Court also dismissed Count I insofar as it was premised on allegations of purely extra-territorial acts of copyright infringement.

On June 11, 2010, the remaining defendants (Shadjareh and America West) moved for summary judgment dismissing all remaining claims against them. The Court received full briefing on the motion and held oral argument, following which the Court orally granted the motion for summary judgment dismissing the complaint against America West, granted the motion for summary judgment dismissing certain claims against Shadjareh, and reserved decision on the motion for summary judgment dismissing the remainder of the claims against Shadjareh. *See* Order dated July 16, 2010.

Turning first to the dismissal of PBSG for lack of personal jurisdiction, the relevant facts and allegations are as follows: Plaintiffs allege in their amended complaint that PBSG is a California corporation with a principal place of business in California. Amended Compl. ¶ 8. PBSG, along with America West, used the fictitious name "Pars TV" to refer to a satellite television station that "broadcast[ ] to millions of viewers worldwide," including viewers in New York and Iran. *Id.* ¶¶ 9–10. The amended complaint further alleges that Shadjareh is the sole and controlling principal of America West, PBSG, and Pars TV. *Id.* ¶ 11. The amended complaint, however, contains no specific allegations regarding the basis of personal jurisdiction over any of the defendants.

Defendants moved to dismiss the amended complaint for lack of personal jurisdiction over PBSG on the ground that PBSG had no connection to New York[2] other than the fact that Pars TV's satellite signal was viewable here (as it is everywhere else in the world). They supported their motion by submitting a declaration by Shadjareh attesting to the facts that Pars TV is a "small satellite station whose main purpose is to highlight and draw attention to the abuses of the oppressive regime currently controlling Iran"; that Pars TV "is not operated for the purpose of generating significant excess revenue"; that PBSG's revenues are "typically minimal"; and that PBSG has no contacts whatsoever with the state of New York (apart, of course, from the undisputed fact that the Pars TV signal is viewable here). Decl. of Amir Shadjareh, 4/3/10, ¶¶ 3, 6. In their memorandum of law opposing this motion, plaintiffs purported to aver additional jurisdictional facts going well beyond what was mentioned in the pleadings, but these factual assertions were unsupported by affidavits or citations to evidence. *See* Pls' Mem. Opp. Mot. to Dismiss, 4/21/10, at 12–15.

In a post-argument letter brief May 13, 2010, the plaintiffs submitted additional evidence in support of a finding of jurisdiction:[3] First, they attached an excerpt

---

**2.** The claims relevant here, which are for copyright infringement and mutilation, respectively arise under the Copyright Act and the Lanham Act. Because neither of these Acts provides for national service of process, this Court adopts the personal jurisdiction rules of the forum state, and accordingly applies the New York state long-arm statute. *See, e.g., Sunward Elecs., Inc. v. McDonald,* 362 F.3d 17, 22 (2d Cir.2004).

**3.** The Court notes that there is a question as to whether some of the exhibits attached to the letter brief may properly be considered. By way of background, at oral argument on the motion to dismiss, the Court made clear that plaintiffs could not defeat the motion to dismiss merely by relying on those facts asserted in their memorandum of law without citation or attribution. The Court then invited plaintiffs to offer supplemental factual materials in support of their opposition, and plaintiffs identified the transcript of Shadjareh's deposition as relevant to their argument. Thus, the Court indicated that it would consider only this deposition transcript and the allegations of the complaint in ruling on the motion, and permitted the parties to submit letter briefs addressing the question of personal jurisdiction based on this expanded rec-

from the transcript of Shadjareh's deposition, at which he admitted, among other things, that Pars TV advertised a trip to New York in September 2009 for demonstrations in front of the United Nations ("UN") building, and that during the week of April 19–25, 2010, advertised for a play called "Beneath the Veil" in Lincoln Center in New York. Decl. of Yasmin Pooyan in Support of Letter Brief, 3/13/10 [sic] ("Y. Pooyan Decl."),[4] Ex. 5 (Dep. of Amir Shadjareh, 4/29/10) at 12–13. Second, plaintiffs attach documents obtained through discovery that they claim support the proposition that "Pars TV touts itself as an advertising venue and derives substantial revenue from selling advertising slots." Pls' Letter Brief, 5/13/10, at 1. These exhibits are respectively (1) a spreadsheet entitled "ADVERTISING FOR, May, 2008," which indicates a PARS was paid a total of $21,800 for advertisements that month (the month of the alleged infringement), and lists the name of each advertiser, but contains no other information about any of the advertisers; (2) a spreadsheet entitled "May 2008 Program's Income," which indicates a total of $50,800 deriving from various programs; and (3) a copy of the website for a company called "Pers Voyage"—a name that appears on the spreadsheet of May 2008 Pars TV advertisers—listing a New York City location (among four others). Y. Pooyan Decl. Exs. 1–3. Next, plaintiffs attach an invoice from Valla Jewelry, Inc., dated July 25, 2007, which plaintiffs believe corresponds to an entity listed as "VALL" on the "Program's Income" spreadsheet, showing a shipment of a white gold and diamond pendant to Shahriar Pooyan at a Mount Kisco, New York address. In her accompanying declaration, Yasmin Pooyan (plaintiff's counsel) avers that Shahriar is her brother and that he bought the pendant for her, after they both saw an advertisement for it on Pars TV, by calling the telephone number displayed during the ad. *Id.* ¶¶ 4–5 & Ex. 4. Then, they attach what they assert is a true copy of a still image from a Pars TV program (obtained from the YouTube website) displaying the Pars TV telephone number and bank account information. They claim that this image represents a solicitation for viewers to donate to Pars TV by wire transfer.[5] *Id.* ¶ 7 & Ex. 6. Further, they attach a declaration of Samad Pooyan, plaintiff's counsel's father and a New York resident, asserting that he viewed at least five advertisements on Pars TV for the play "Beneath the Veil" that indicated that the play was scheduled for a Lincoln Center performance on April 25, 2010, and that he and a group of friends and relatives decided to attend the play at Lincoln Center on the basis of that advertisement. Decl. of Samad Pooyan, 5/12/10, ¶¶ 2, 4–7. Finally, plaintiffs assert (without citation to evidence) that they believe many New York residents donated to Pars TV, and that defendants failed to

---

ord. Plaintiffs' letter brief, dated May 13, 2010, attached an affidavit and several additional exhibits purporting to address the jurisdictional issue. Although the Court did not expressly authorize the submission of additional evidence beyond Shadjareh's deposition transcript, the Court assumes *arguendo* that these materials are properly part of the factual record.

4. The date listed on Ms. Pooyan's declaration is incorrect, as the Court did not direct sub-

mission of the letter brief (itself dated May 13, 2010) until May 6, 2010.

5. While it may be logical to infer that PBSG solicits donations from the fact that this screenshot displays Pars TV's bank account information, there is nothing on the face of the undated image that confirms that it represents a solicitation of donations, and there is no assertion by anyone with personal knowledge that this is so.

respond to a document request regarding the sponsors who submit donations to Pars TV. Y. Pooyan Decl. ¶ 8.[6]

■ Based on this record, the plaintiffs asserted that the Court has personal jurisdiction over PBSG under two subsections of New York's long-arm statute relating to specific personal jurisdiction. They argued first that pursuant to New York CPLR § 302(a)(1), PBSG "transacts ... business within the state," and second, that pursuant to CPLR § 302(a)(3)(ii), PBSG "commit[ed] a tortious act without the state causing injury to person or property within the state," and that PBSG "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." The Court holds that plaintiffs have failed to make *prima facie* showing of jurisdiction under either provision through their pleadings and affidavits, and have certainly not adduced evidence that, if credited by a trier of fact, would establish jurisdiction.[7]

To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant "transacts any business" in New York and, if so, (2) whether this cause of action "aris[es] from" such a business transaction. Courts look to "the totality of the defendant's activities within the forum," to determine whether a defendant has "transact[ed] business" in such a way that it constitutes "purposeful activity" satisfying the first part of the test. As for the second part of the test, "[a] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York."

*Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 246 (2d Cir.2007) (alterations in original) (citations omitted). It is apparent that the evidence plaintiffs here offer of purposeful contact by PBSG with New York is far too speculative and inferential to satisfy this test.

---

**6.** This paragraph of Ms. Pooyan's affidavit also asserts that on March 11, 2010, plaintiffs "petitioned the Court" to compel defendants to produce the requested documents. To the extent this is a suggestion that the Court considered and rejected a request to compel such production, that suggestion is disingenuous. To be sure, during their numerous teleconferences with the Court, plaintiff's counsel made various broad accusations of, among many other things, defendants' recalcitrance in document production, but they made no specific application for leave to file a motion to compel the production of these particular documents. Plaintiffs' counsel is no doubt aware that, as clearly stated in the undersigned's Individual Practices, the Court would not deny plaintiffs the right to move to compel production of these or any other documents if the dispute could not be resolved in a pre-motion telephonic conference.

**7.** Where a court "chooses to rely on pleadings and affidavits" to evaluate a motion to dis-

miss for lack of personal jurisdiction, "the plaintiff need only make a *prima facie* showing of personal jurisdiction over defendant." *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 364 (2d Cir.1986). "After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.1990). Here, where plaintiffs rely on facts obtained through discovery to resist the motion to dismiss, the more stringent standard applies. However, because no evidentiary hearing was held on the motion, "all pleadings and affidavits must be construed in the light most favorable to [the plaintiff] and all doubts must be resolved in the ... plaintiff's favor." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir.1990).

As an initial matter, the mere fact that Pars TV's satellite signal is viewable worldwide does not amount to the transaction of business in New York. While certain out-of-circuit cases can be read to suggest that nationwide broadcasters of infringing content may be subject to jurisdiction in the state where the intellectual property is held, these cases address the constitutional due process standard rather than the narrower requirements of New York's long arm statute, *see Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship,* 34 F.3d 410, 411–12 (7th Cir.1994); *Edy Clover Prods., Inc. v. NBC, Inc.,* 572 F.2d 119, 120–21 (3d Cir.1978), and are thus not applicable to the issue before the Court.

Next, as to the evidence of Pars TV's advertising, it is unclear from the record whether any of PARS TV's advertisers are based in New York (even if at least one of these advertisers has one office located in New York). The fact that the advertisements broadcast on Pars TV are viewable in New York, as they are everywhere, does not, without more, establish personal jurisdiction. *Cf. Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 418 (9th Cir.1997) ("[S]o far as we are aware, no court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state."); *Citigroup, Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 565 (S.D.N.Y.2000) (noting that the use of a "passive" website "has been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant"). Even the sale of advertisements to New York-based companies has been held to be insufficient to establish jurisdiction absent a showing that the defendants intentionally targeted the New York market or "touted their ability to reach the New York market to anyone." *Royalty*

*Network Inc. v. Dishant.com, LLC,* 638 F.Supp.2d 410, 422 (S.D.N.Y.2009); *see also Yash Raj Films (USA) Inc. v. Dishant.com LLC,* 2009 WL 4891764, at *6 (E.D.N.Y. Dec. 15, 2009) ("Nothing in the record ... here indicates that defendants had targeted New York-based advertisers or touted their ability to reach the New York market."); *cf. Capitol Records, Inc. v. VideoEgg, Inc.,* 611 F.Supp.2d 349, 360 (S.D.N.Y.2009) (finding that defendant transacted business in New York where plaintiffs introduced specific evidence that defendant's employees "touted the company's large New York user base to potential advertisers and responded directly to advertising inquiries from New York-based companies."). For these reasons, the mere facts that PBSG may have sold advertisements to at least one company with a New York office location and that some Pars TV advertisers may have sold their products to New York consumers are insufficient to establish that PBSG "transacted business" in New York.

The remainder of the jurisdictional facts adduced by plaintiffs are similarly unavailing. The fact that earlier this year PBSG advertised a play that was performed in New York (among other places) simply does not demonstrate a purposeful targeting of a New York audience. Nor does the allegation that Pars TV indiscriminately solicited donations from all its viewers, including its viewers in New York, make the requisite showing. *Cf. Yash Raj Films,* 2009 WL 4891764, at *5 ("[T]he mere availability of a site to a putative customer in New York does not automatically constitute the 'purposeful availment' required for a 'transaction of business' in this state. . . ."). And even if any of these utterly incidental contacts (or the more purposeful effort in September 2009 to organize a demonstration outside the UN), many of which took place years after the

alleged infringing broadcast, amounted to the transaction of business in New York, personal jurisdiction under § 302(a)(1) also requires an "articulable nexus" or "substantial relationship" between "the claim asserted and the actions that occurred in New York," *Best Van Lines*, 490 F.3d at 246 (internal quotation marks omitted), which the record here does not support. *See Royalty Network*, 638 F.Supp.2d at 421 n. 8 (finding insufficient nexus between plaintiff's claim that defendant website infringed its copyright and the mere fact that "the transactions [of business alleged for jurisdictional purposes] involve the sale of advertising space to national advertisers, some of whom happen to be based in New York").[8]

■ For related reasons, there is no jurisdiction over PBSG under CPLR § 302(a)(3)(ii). This subsection requires plaintiffs to show, among other things, that the defendant "expects or should reasonably expect the act to have consequences in the state," which in turn requires showing a "purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court." *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir.1999); *see also id.* ("[I]t is not enough

that a defendant foresaw the possibility that its product would find its way here; foreseeability must be coupled with evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market." (internal quotation marks omitted)). Applying these principles, another court in this District has found that jurisdiction under this prong was lacking when plaintiffs failed to show "tangible manifestations of defendants' intent to target New York nor concrete facts known to defendants that would lead them to foresee being sued in the Southern District of New York," and when there was "nothing in the record to indicate defendants had knowledge that a New York company held copyright interests in any of the [intellectual property] at issue in th[e] action." *Royalty Network*, 638 F.Supp.2d at 424. Here too, the vague, speculative, and indirect connections between PBSG's broadcasting activities and the forum state that the plaintiffs rely on fall short of demonstrating that PBSG reasonably should have anticipated being haled into a New York court, and for that reason alone there can be no jurisdiction over PBSG under § 302(a)(3)(ii).[9]

---

8. Plaintiffs also urge the Court to adopt the inference that Pars TV must have targeted a New York audience simply because a large percentage of the Iranian–American population resides in the New York area. This factual assertion is not supported by admissible demographic evidence, but even if it were, it cannot suffice to establish jurisdiction where there is no evidence of any purposeful attempt to target the New York market. *See Royalty Network*, 638 F.Supp.2d at 422 (rejecting inference that defendants, who told potential advertisers that they could target Indian–Americans by advertising on their music-sharing website, "were, in effect, touting their website's ability to reach New York residents since roughly 15 percent of the Indian population residing in the United States lives in New York").

9. Because of plaintiffs' failure to satisfy this element of the statute, the Court need not reach the remaining elements for establishing personal jurisdiction under CPLR § 302(a)(3)(ii). The Court notes, however, that plaintiffs have offered no concrete evidence, beyond the mere facts that one of its advertisers has an office in New York and that plaintiff's counsel's brother purchased a $690 pendant from a Pars TV advertiser, that goes to whether PBSG "derives substantial revenue from interstate or international commerce." Plaintiffs rely only on protestations that defendants failed to comply with their discovery demands in this respect, but plaintiffs never moved to compel production of such documents. This lack of evidence is independently sufficient to preclude jurisdiction under this subsection of the statute. *See,*

For these reasons, the Court dismissed the amended complaint against PBSG for lack of personal jurisdiction.[10]

█ Turning next to the pending aspects of defendants' summary judgment motion, the Court reserved decision only on the issue of whether Shadjareh is liable for copyright infringement in his capacity as principal and sole officer of PBSG. For the following reasons, the Court finds that there is a genuine issue of material fact in this regard, but only as to whether Shadjareh is vicariously liable for the alleged infringement, and accordingly denies the motion as to that theory of liability alone.

The facts relevant to this aspect of the summary judgment motion, which relate only to Shadjareh's role in the alleged infringement,[11] are as follows: Shadjareh has attested to being PBSG's officer and sole shareholder. Decl. of Amir Shadjareh, 2/26/10, ¶ 1. Shadjareh's deposition testimony, viewed in the light most favorable to plaintiffs, shows that he supervises the selection of Pars TV's programming:

Q: In other words, what is shown on Pars TV, who selects that?

A: The programmers select and the with under my supervision.

. . .

You know, there is a lot of programmers here. Some of them, you know, they leasing the time. Some of them, they are working for the TV. Usually, you know, they select his own program, you know, and the under my supervision. You know, they have to let me know what they are airing.

Q: And do you review what is aired every day before it goes on Pars TV?

A: No. That's—most of them is live. You know, they talk about them.

. . .

Q: Okay. But are you aware of what is being broadcast?

A: Most time, yes, they told me regarding the program what they are going to show.

Decl. of Matthew Kane, 6/11/10, Ex. K (Shadjareh Dep., 4/29/10), at 10–11. Shadjareh also testified that Pars TV carries advertising and that he employs at least ten workers at Pars TV. *Id.* at 9, 11.

In resisting Shadjareh's motion for summary judgment on the copyright infringe-

*e.g., K I C Chems., Inc. v. ADCO Chem. Co.,* 1996 WL 122420, at *8 (S.D.N.Y. Mar. 20, 1996) ("The long-arm statute is careful to require that the defendant derive *substantial* revenue from interstate commerce, and imposes the burden on the party seeking to establish jurisdiction to establish also that the statutory requirements have been met.").

Furthermore, New York law is presently unsettled on the question of when copyright and trademark torts involving out-of-state infringement cause injury to property within the forum state, which relates to another element essential to the exercise of jurisdiction under CPLR § 302(a)(3)(ii). *See Penguin Group (USA) Inc. v. Am. Buddha,* 609 F.3d 30 (2d Cir.2010) (certifying to the New York Court of Appeals the following question: "In copyright infringement cases, is the situs of injury for purposes of determining long-arm

jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii) the location of the infringing action or the residence or location of the principal place of business of the copyright holder?").

10. Because this dismissal is based on plaintiffs' failure to satisfy the requirements of New York's long arm statute, the Court does not reach the issue of whether the exercise of personal jurisdiction over PBSG would be consistent with due process under the Constitution.

11. Although defendants dispute plaintiffs' account of PBSG's alleged infringing broadcast of "Be Like Others," for purposes of the motion it may be assumed that PBSG broadcast the film without authorization in May 2008. *See* Decl. of Tanaz Eshaghian, 6/23/10, ¶ 12.

ment claim, plaintiffs advance three theories of Shadjareh's liability in his capacity as principal of PBSG: (1) direct infringement, (2) contributory infringement, and (3) vicarious infringement. The first two theories can readily be dismissed because they require a degree of personal involvement that significantly surpasses what is supported by the record here, which shows that Shadjareh at most played a supervisory role in the decision to broadcast the film. *See H.M. Kolbe Co. v. Shaff,* 240 F.Supp. 588, 589–90 (S.D.N.Y.1965) ("Officers or directors of a corporation found guilty of infringement are individually liable if they personally participated in the acts constituting infringement."); *Warner Bros. Ent'mt Inc. v. Ideal World Direct,* 516 F.Supp.2d 261, 267–68 (S.D.N.Y.2007) ("To state a claim for contributory copyright infringement, a plaintiff must aver that the defendant, 'with knowledge of the infringing activity, induce[d], cause[d], or materially contribute[d] to the infringing conduct of another.'" (alterations in original) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971))).

This leaves the theory of vicarious infringement. "A defendant is liable for vicarious copyright infringement if it 'profit[s] from direct infringement while declining to exercise a right to stop or limit it.'" *Arista Records LLC v. Lime Group LLC,* 715 F.Supp.2d 481, 518, 2010 WL 2291485, at \*24 (S.D.N.Y. May 25, 2010) (alteration in original) (quoting *MGM Studios Inc. v. Grokster,* 545 U.S. 913, 930, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005)). To prove vicarious liability for copyright infringement, the plaintiff must show that the defendant had a "right and ability to supervise [that] coalesce[d] with an obvious and direct financial interest in the exploitation of copyrighted materials." *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.,* 118 F.3d 955, 971 (2d

Cir.1997) (alterations in original) (internal quotation marks omitted).

Based on Shadjareh's status as PBSG's sole owner and controlling principal of PBSG, as well as his deposition testimony that his programmers select shows to broadcast under his supervision, it cannot be disputed on the present record that plaintiffs have shown a "right and ability to supervise."

The element of "direct financial interest" presents a somewhat closer question. On the one hand, a number of cases have imposed such liability where, as here, the defendant is the controlling principal of a corporation that committed infringing acts. *See, e.g., Design Tex Group v. U.S. Vinyl Mfg. Corp.,* 2005 WL 2063819, at \*4 n. 6, 2005 U.S. Dist. LEXIS 18276, at \*13 n. 6 (S.D.N.Y. Aug. 24, 2005) ("There can be no serious question that [a defendant who was president and sole owner (with his wife) of a small company] had a financial interest in the infringing activity."); *U.S. Media Corp. v. Edde Entm't Corp.,* 1998 WL 401532, at \*7 (S.D.N.Y. July 17, 1998) ("It is … apparent that [a defendant who was a 50% shareholder and in charge of determining film purchases] had the 'right and ability to supervise' and, as the dominant shareholder, had a direct financial interest in the company's 'exploitation of copyrighted materials.'"); *Peer Int'l Corp. v. Luna Records, Inc.,* 887 F.Supp. 560, 565 (S.D.N.Y.1995) (imposing vicarious liability on defendant who was corporation's sole shareholder and director); *see also Sw. Bell Tel. Co. v. Nationwide Indep. Directory Serv., Inc.,* 371 F.Supp. 900, 907 (D.Ark. 1974) ("Officers or directors of a corporation guilty of infringement are individually liable if personally participating in the acts constituting infringement *or if they are sole shareholders.*" (emphasis added)). But Shadjareh contends that an inference of direct financial benefit cannot be drawn

merely from his position as sole owner because here, unlike in the above-cited cases, the infringing product was not sold directly to the market.

This distinction misses the point of vicarious liability for copyright infringement, which is predicated on "the party found strictly liable [being] in a position to police the conduct of the 'primary' infringer." *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 309 (2d Cir.1963). Thus, in the seminal case of *Shapiro, Bernstein & Co.*, the Second Circuit observed that courts had historically limited the liability of remote parties such as the "landlord [who] lets his premises without knowledge of the impending infringement by his tenant, exercises no supervision over him, charges a fixed rental and receives no other benefit from the infringement," but had held "the dance hall proprietor liable for the infringement of copyright resulting from the performance of a musical composition by a band or orchestra whose activities provide the proprietor with a source of customers and enhanced income." *Id.* at 307. From these cases, the Court of Appeals derived the principle that vicarious liability is appropriate when the connection between the defendant and the direct infringer resembles an "employer-employee" relationship rather than a "landlord-tenant" relationship. *Id.* at 308. Other courts have observed that vicarious liability has been imposed "on the operator of a business where infringing performances enhance the attractiveness of the venue to potential customers," *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir.1996), or as long as "there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of *how substantial* the benefit is in proportion to a defendant's overall profits," *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir.2004). For these reasons, the infringing product need not be sold directly to the market for the supervisor to be vicariously liable, as long as the causal relationship between the infringing conduct and the defendant's financial benefit is sufficiently unattenuated.

The record here does not suggest that Shadjareh is operating PBSG as a purely eleemosynary enterprise. Rather, the available evidence indicates that he intends to run a profitable business and that his sources of revenue, among others, are advertising and the solicitation of donations. The obvious inference is that Shadjareh supervises his employees' programming selections with the goal of maximizing revenues in mind. Thus, the only reason for Pars TV to have shown "Be Like Others," under Shadjareh's supervision, was to "provide the proprietor with a source of customers and enhanced income," or to "enhance the attractiveness of the [channel] to potential [advertisers]." There is no person who will benefit more directly than Shadjareh from any increases in revenues attributable to the broadcast of infringing content, and there is no person in a better position to "police" the alleged primary infringing conduct. Accordingly, plaintiffs have at the very least created triable issues on Shadjareh's vicarious liability for the alleged infringement.[12]

12.   Shadjareh also relies on the Second Circuit's decision in *Softel*, which held that evidence that a defendant was the president and "a shareholder" of a company committing infringing acts was "too attenuated to establish a sufficiently 'direct' financial interest in the exploitation of copyrighted materials." 118 F.3d at 971. But *Softel* is not controlling here for several reasons, including that the defendant there was not the *sole* shareholder of the company and that the Court of Appeals, for procedural reasons, declined to consider evidence that defendant's company had only five employees, a fact offered "in support of a theory that any president of a five-person corporation would have the requisite control and

For the foregoing reasons, the Court hereby grants the motion for summary judgment dismissing the copyright infringement claim (Count I of the amended complaint) insofar as it alleges that Shadjareh committed direct or contributory infringement, but denies that motion insofar as the claim alleges that Shadjareh is liable for vicarious infringement.

In addition, the Court hereby dismisses the complaint in its entirety against defendants "XYZ Company" and "John Doe" without prejudice. *See, e.g., Coward v. Town & Vill. of Harrison*, 665 F.Supp.2d 281, 300 (S.D.N.Y.2009) ("Where a plaintiff 'has had ample time to identify' a John Doe defendant but gives 'no indication that he has made any effort to discover the [defendant's] name,' . . . the plaintiff 'simply cannot continue to maintain a suit against' the John Doe defendant.").

The parties are directed to jointly call Chambers at noon on July 28, 2010 to set a trial date for the one remaining claim (vicarious copyright infringement against Shadjareh).

The Clerk of the Court is directed to close document number 25 on the docket of this case.

SO ORDERED.

financial interest to establish vicarious liability." *Id.* at 971 & n. 12.